# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23103-CIV-TORRES

EDILBERTO GARCIA and all others
similarly situated under 29 USC 216(B),

        Plaintiff,

vs.

MASON CONTRACT PRODUCTS, LLC,

        Defendant.

_____/

## **FINDING OF FACTS AND CONCLUSIONS OF LAW**

This matter is before the Court following a bench trial conducted December 3, 2009, on a preliminary question of arbitrability, pursuant to 9 U.S.C. § 4, that requires determination by the Court.  The Court previously ruled that an issue of fact was presented as to whether Plaintiff signed an arbitration agreement that required Plaintiff to arbitrate her claim for unpaid wages under the Fair Labor Standards Act.  The Court also previously found that Plaintiff had waived her right to seek a timely jury trial with respect to that preliminary issue.  The Court has now conducted a bench trial and issues the following findings of fact and conclusions of law.  To the extent that any findings of fact constitute conclusions of law, they are hereby adopted as such; to the extent that any conclusions of law constitute findings of fact, they are also so adopted.

## *I.  FINDINGS OF FACT*

1.  From February 2007 to June 2008, Defendant Mason Contract Products, LLC ("Mason") employed Plaintiff Edilberto Garcia ("Garcia") as a drape hanger/installer.  Mason is a business centered in Las Vegas, Nevada, that manufactures and installs hospitality products like draperies and bedding for use in hotels and similar establishments.

2.  Garcia was hired on a full-time basis through a written employment agreement.  (DX J)

3.  At the time that Mason hired Garcia as an employee, it was Mason's practice to generate its employment agreements from a form agreement, prepared by Mason's counsel, that contained the following dispute resolution clause:

> 6.6.  Dispute Resolution
>
> All disputes arising out of, or relating to this Agreement, the employment of Employee by the Company or the termination of such employment ("Disputes") shall be resolved in accordance with the procedures set forth in this paragraph 6.6., which shall be the sole and exclusive procedures for the resolution of such disputes, except that Employer may seek temporary relief from any court having jurisdiction a temporary restraining order, stay, preliminary injunction or other provisional remedy to which the Employer would be entitled in absence of the arbitration clause contained in Paragraph 6.6., until a determination by the arbitrators, whether interim or final, and confirmation and enforcement thereof.  This Dispute Resolution clause shall include all claims for discrimination brought under any state, federal or local law including, but not limited to; Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; The Employee Retirement Income Security Act of 1974; The Americans with Disabilities Act of 1990; The Age Discrimination in Employment Act; The Occupational Safety and Health Act; any compensation, severance, pay, benefits or other plan, program or practice; any other federal, state or local civil, bias, whistleblower, retaliation, discrimination or human rights law or any other local, state or federal law, regulation or ordinance;

any public policy, contract (whether oral or written, express or implied from any source), tort, or common law; and, any allegation for costs, fees, or other expenses including attorneys' fees incurred in these matters.

4. Garcia's written employment agreement was entered into, in counter-parts, on or about January 31, 2007, from the same form agreement previously used by Mason as well as its affiliated company, MRC Industries.

5. Mason is an LLC whose sole member is Leonard Horowitz. MRC Industries is a New York corporation whose principal shareholder is Leonard Horowitz. Mason and MRC Industries are not parent or subsidiary entities, but are affiliated through common ownership and control.

6. Garcia's employment agreement in particular included the same dispute resolution language found in Section 6.6. quoted above. (DX J).

7. The dispute resolution clause was standard in all employment agreements with Mason and was not negotiated out of Garcia's employment agreement. Virtually identical agreements were entered into with similarly situated Mason employees, which all contained arbitration clauses.

8. Garcia testified at trial that he acknowledged signing a written employment agreement with Mason, but that agreement did not include an arbitration clause like the one quoted above. The Court does not credit Garcia's testimony in this regard because all other evidence in the record, circumstantial or otherwise, rebuts that recollection. The Court also credits Horowitz's testimony that it was his intention to employ Garcia only through an employment agreement that included the standard arbitration clause he had with other similarly situated employees.

9. The dispute resolution provision in Section 6.6. above is in fact the same dispute resolution provision contained in Garcia's employment agreement. The Court further finds that the testimony supporting the authenticity of that agreement, DX J, is more credible and reliable than the contrary testimony presented by Garcia.

10. Garcia signed the employment agreement with Mason near the inception of his full-time employment, which remained in force until June 2008 when his employment terminated.

11. The employment agreement signed by Garcia, which was intended to be between Garcia and Mason, failed to specify that Mason was the employer. Instead, the parties to the written agreement are Garcia and MRC Industries, Inc., Mason's affiliated company. Mason is not identified in the agreement as a party or signatory to the arbitration clause.

12. At the time that Mason's principal, Horowitz, signed the agreement he did not correct the error in the agreement and signed as principal of MRC Industries. The Court credits his testimony, however, that he signed the agreement as Mason's principal, hiring an installer that worked only in the Mason business line. Garcia had no involvement in any line of business run by MRC Industries.

13. The error in the document was the result of a scrivener's error when counsel modified the agreement for Garcia's employment without clarifying the proper party employer.

## *II.  CONCLUSIONS OF LAW*

Following the bench trial conducted with respect to the arbitrability of Garcia's unpaid wage claims lodged against Mason under the Fair Labor Standards Act, the facts in this case are settled. The clear weight of the evidence in this case supports the finding that Garcia and Mason entered into an employment relationship, that Mason intended to memorialize that relationship through a written agreement that contained an arbitration clause, but that in execution of that agreement Mason failed to identify the proper party to the agreement. In other words, through a scrivener's error, Garcia entered into an employment/arbitration agreement with an entity that did not constitute his "employer" as that term is defined for our purposes under the FLSA.

Garcia agreed that he signed an agreement, but disputed that it contained the arbitration clause that is clearly found in DX J admitted at trial. The Court, however, finds that he did in fact sign that particular agreement based upon the entire weight of the evidence presented. Garcia's recollection has proved to be mistaken.

That factual finding, however, is not enough by itself to compel arbitration in this case. The scrivener's error in the document allows Garcia to argue, as he does here, that he cannot be compelled to arbitrate his claims against Mason, because any arbitration agreement that he did sign was with MRC Industries, not Mason. In other words, because one cannot be compelled to arbitrate a claim against a non-signatory to an arbitration agreement, the signatory to the agreement – Garcia – cannot be compelled to arbitrate by a non-signatory – Mason. Accordingly, Garcia concludes that his claims under the FLSA must be allowed to proceed in this action filed in Federal

Court in Miami, Florida, rather than through a AAA arbitration proceeding in New York.

The strong federal preference for arbitration of disputes expressed by Congress in the Federal Arbitration Act ("FAA") must be enforced wherever possible. *Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255, 1258 (11th Cir. 2003). Nevertheless, it is axiomatic that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *MS Dealer Service Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999) (citation omitted).

A district court, presented with a challenge to arbitrability under 9 U.S.C. § 4, must undertake a two-step inquiry. Its first task "is to determine whether the parties agreed to arbitrate that dispute," a determination made by reference to the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626-28 (1985) (citations omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.* If the court determines that the parties did agree to arbitrate the dispute in question, then the second step is to consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 628.

In this case, Garcia's only challenge to arbitrability focuses on the first step of this equation – whether Garcia agreed to arbitrate any employment disputes he now has with Mason, his employer, despite the fact that the only written agreement

evidencing an intent to arbitrate was entered into between Garcia and MRC Industries. Garcia argues that Mason, a non-signatory to that agreement, has no standing or contractual basis to compel Garcia to arbitrate Garcia's claims against Mason.

Though we are personally sympathetic with Garcia, because we would apply an arbitration agreement quite narrowly and literally if we were operating on a tabula rosa basis, we are constrained to apply arbitrability principles as defined by the Eleventh Circuit Court of Appeals. Our Circuit has on multiple occasions had an opportunity to review cases raising similar arbitrability issues as this one. Inevitably, the result is contrary to Garcia's position because the Court has taken a very broad view of the scope of arbitration. Indeed, the law of this Circuit today is that the "lack of a written arbitration agreement is not an impediment to arbitration." *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir. 1993) (citing *McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co. Inc.,* 741 F.2d 342, 344 (11th Cir. 1984)). The Eleventh Circuit's broad view of the scope of arbitration has been recognized as such by other circuits. "[The Eleventh Circuit] has taken the lead in applying equitable estoppel under the intertwined-claims basis." *Grigson v. Creative Artists Agency,* 210 F.3d 524, 527 (5th Cir. 2000) (citing *McBro*).

Most relevant here, in fact, the Eleventh Circuit has identified two instances in which a non-signatory can compel arbitration against a signatory on an estoppel theory:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the

> written agreement in asserting [its] claims' against the nonsignatory. When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[ ] out of and relate[ ] directly to the [written] agreement,' and arbitration is appropriate.  Second, application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.  Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999) (internal quotations and citations omitted).

Garcia persuasively argues that his claims here do not fall under the first part of this exception because his claims do not rise and fall on the existence and terms of the written agreement that he has with MRC Industries.  In other words, he has not alleged a breach of contract claim and his FLSA claim cannot be negated by a lack of an employment agreement.  The fact that he was actually performing "work" for Mason is enough to state a FLSA unpaid wage claim, irrespective of any written agreement.

The Eleventh Circuit, however, does not limit the equitable estoppel theory to just claims directly arising from an arbitrable agreement.  In *Sunkist,* Plaintiff Sunkist had an agreement to arbitrate disputes only with its licensee, SSD. 10 F.3d at 755.  A separate unrelated corporate entity, Del Monte, later acquired the stock of SSD, placed the "Sunkist" brand in production with its own soft drink brands purportedly based upon the SSD license, at the same time essentially eliminated SSD's separate operating status. *Id.* In other words, Del Monte succeeded to all of SSD's rights and obligations.  When a dispute arose regarding Del Monte's use of the Sunkist license,

Sunkist sued Del Monte for interference with its license agreement with SSD, along with a slew of other claims including federal statutory unfair competition claims that did not directly arise out of any license agreement with SSD. Del Monte moved to compel arbitration on the grounds that the license agreement between Sunkist and SSD called for arbitration. *Id.* at 755-56. The district court granted Del Monte's motion, and the dispute proceeded to arbitration. *Id.* at 756.

On appeal, Sunkist argued that the court should not have decided the arbitrability of its claim with Del Monte because its consent to arbitration was a factual dispute. Del Monte countered that Sunkist was equitably estopped from denying it the right to arbitrate under the license agreement between it and SSD. *Id.* at 756-57. The Eleventh Circuit focused primarily on the inquiry whether the dispute fell "within the scope of the arbitration clause contained in the license agreement." *Id.* at 757-58. To that end, the court considered whether Sunkist's claims against Del Monte for interference had *any* relationship to the license agreement between it and SSD. *Id.* at 758. In finding that it did, the court found that the existence of a written license agreement was always presumed. *Id.* at 758. And as it found that each of Sunkist's claims against Del Monte either arose out of or at least were "related" to the license agreement, the court held that Sunkist's disputes with Del Monte were properly submitted to arbitration. *Id.*

The Eleventh Circuit applied its earlier decision in *McBro,* 741 F.2d at 343-44, where the court relied upon the close relationship between the party defendants, including one who was not a signatory to the agreement requiring arbitration, and the

alleged wrongs of that non-signatory under a construction agreement that was arbitrable. Consequently, it is unmistakeable that the Eleventh Circuit emphasizes the interrelationship between the parties and claims at issue, and the underlying subject matter of the agreement that requires arbitration.

Though Garcia's claim here does not directly arise from the arbitrable agreement with MRC Industries, his claim presumes the existence of an employment relationship. And as he concedes that such a relationship was formed only after he signed the employment agreement, it is clearly not a stretch to find that his claim is related to such an agreement, just as Sunkist's federal unfair competition claims against Del Monte were related to a license agreement with a separate corporate entity. Similarly, Del Monte was a corporate successor to an arbitrable agreement, just like Mason is a de facto successor to its affiliate's arbitrable agreement with an employee that worked only for Mason for the life of the agreement. Hence, after giving this matter much thought, it is difficult to reconcile drawing a distinction between the two factual situations.

Moreover, Garcia argues in his proposed findings that *Sunkist* is distinguishable because that case was only about a parent/subsidiary relationship. [D.E. 67 at 6]. That is simply not correct. It may be a way to distinguish the Second Circuit's case in *Choctaw Generation Ltd. Partnership v. American Home Assurance Co.,* 271 F.3d 403, 406 (2d Cir. 2001), but it is *not* a basis to distinguish the Eleventh Circuit's holding in *Sunkist*. Del Monte was not SSD's parent; rather, Del Monte was a separate corporate entity that stepped into SSD's shoes, just like Mason here stepped into the shoes of its

affiliate, MRC Industries, when it employed and compensated its employee Garcia. Consequently, Garcia has done little to persuade the Court that *Sunkist* should not drive the result in this case.

With respect to the second alternative basis for estoppel, which requires a claim against a signatory intertwined with a non-signatory, there is no basis to apply it here since there is no signatory that has been made a party defendant in the case. But the original estoppel theory that we are bound to follow clearly applies here. Indeed, as a policy matter, Garcia has little standing to complain because, as the Court found, he agreed to an arbitration clause as a condition for his employment as an installer at Mason. As a signatory, it is far less prejudicial to enforce his own agreement, as compared with a situation where a non-signatory is being compelled to arbitrate. *See, e.g., E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,* 269 F.3d 187 (3d Cir. 2001). We agree with Judge Gold from our District that "this is a classic case of a signatory to an agreement resisting arbitration on technical grounds. Under such circumstances, the Eleventh Circuit allows for extension of the Arbitration Clause to the non-signatory Defendants." *Sea Bowld Marine Group, LDC v. Oceanfast Pty Ltd.,* 432 F. Supp. 2d 1305, 1315 (S.D. Fla. 2006) (enforcing arbitration clause against non-signatory defendant pursuant to Eleventh Circuit's equitable estoppel cases).

Again, though we view the result in this case to be, in effect, a reformation of a contract based upon a unilateral mistake (which under traditional contract principles would not allow for reformation at law), arbitration agreements are widely and broadly

enforced in the Eleventh Circuit. Equitable principles may be applied to enforce such an agreement against a signatory even though a writing technically does not exist with a non-signatory. This is such a case based upon existing Eleventh Circuit precedent. We have no choice but to apply it, leaving to our Court of Appeals to decide if the result in this case requires a change in direction. *See McGinley v. Houston,* 361 F.3d 1328, 1331 (11th Cir. 2004) ("In cases involving questions of federal law the doctrine of stare decisis also implicates the binding nature of decisions rendered by one federal court over another. . . . A circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts.").

### III. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby **ORDERED AND ADJUDGED**:

A. Pursuant to 9 U.S.C. § 4, the Court finds that the parties to this case are bound to comply with an agreement for arbitration of all claims raised in this case.

B. The Court ORDERS that the parties shall proceed with the arbitration in accordance with the terms thereof.

C. The pending case shall be DISMISSED by separate Order without prejudice to adjudication of any such claims at arbitration.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 9th day of February, 2010.

EDWIN G. TORRES  
United States Magistrate Judge